**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division**

Case No.: 0:25-cv-60966

ZALMEN LEVY A/K/A
ZALMY LEVY,

      Plaintiff,

vs.

CITIBANK, N.A.,

      Defendant.

_____/

**COMPLAINT**

Plaintiff Zalmen Levy a/k/a Zalmy Levy ("Plaintiff") brings this action against Defendant Citibank, N.A. ("Defendant" or "Citibank") to address Defendant's invasive and relentless misuse of automated technology. Defendant's campaign of prerecorded robocalls hijacked Plaintiff's number and left him powerless to address the harassment in real time, forcing him to expend significant effort to uncover the source of the abuse and demand its cessation.

**INTRODUCTION**

1. This action arises from Defendant Citibank's deliberate and egregious violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and Florida's Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"). Defendant engaged in a campaign of prerecorded robocalls to Plaintiff's cellular phone, which hijacked Plaintiff's number for purposes wholly unrelated to Plaintiff.

2. Over the course of Defendant's harassment, Plaintiff received repeated and unwanted prerecorded messages from Defendant, all of which were intended for a business or

individual unknown to Plaintiff. These calls left Plaintiff unable to communicate with a live representative, forcing Plaintiff to call Defendant back in an attempt to stop the harassment.

3. Upon calling Defendant, Plaintiff was repeatedly informed that the calls were directed to an unrelated third party. Despite Plaintiff's multiple demands to cease the robocalls and to correct its error, Defendant persisted in its campaign of invasive and unauthorized communications.

4. Defendant's conduct reflects a systemic failure to comply with the TCPA and FTSA and caused Plaintiff significant harm, including disruption of daily life, invasion of privacy, and emotional distress. Defendant's actions, including the hijacking of Plaintiff's number and the use of prerecorded calls, represent the very type of consumer harm that these statutes were enacted to prevent.

**JURISDICTION AND VENUE**

5. This court has jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Federal courts have jurisdiction over private suits arising under the TCPA. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

6. Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over Plaintiff's state law FCCPA claim in that it is so related to the federal TCPA and FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue in this District is proper because Plaintiff resides in Broward County, Florida. Additionally, Defendant does business and places phone calls in the Southern District of Florida.

## PARTIES

8.      Plaintiff Zalmy Levy is a natural person who resides in Broward County, Florida. Plaintiff is the owner, regular user, and possessor of the cellular telephone number that was unlawfully called by Defendant.

9.      Defendant: Citibank, N.A. is a national banking association with its principal place of business in New York, NY. Defendant conducts business nationwide, including within the state of Florida.

10.     At all times relevant to this Complaint, Citibank has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA. 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

## BACKGROUND AND GENERAL ALLEGATIONS

11.     Defendant's conduct, as detailed herein, represents some of the most egregious violations of the TCPA to date, demonstrating an unprecedented level of corporate disregard for consumer rights since the statute's enactment.

12.     Upon information and belief, Defendant, through its agents, representatives, and/or employees, used an automatic telephone dialing system ("ATDS") to initiate thousands of unsolicited calls to Plaintiff's cellular number. These calls originated from multiple numbers and were unrelenting.

13.     Each time Plaintiff answered these calls, he was greeted by an automated, machine-operated, and pre-recorded voice message designed solely to facilitate Defendant's robocalling campaign while circumventing any opportunity for live communication. These intrusive and repetitive pre-recorded calls left Plaintiff with no means to immediately stop the harassment or

speak with a live representative. The only option for Plaintiff to engage in live communication to demand that Defendant cease this pre-recorded robocall onslaught was by calling back and waiting on hold, yet despite these efforts, the relentless pre-recorded messages persisted. At no time when Plaintiff picked up a call, was he able to speak with a live person, forcing him to call Defendant back after each automated message.

14. Plaintiff is the sole owner, possessor, subscriber, and primary user of the cellular telephone repeatedly targeted by Defendant's automated calls, with exclusive authority to grant or withhold consent for such communications. Plaintiff never provided this number to Defendant, nor was it ever associated with any account or relationship with Defendant. Defendant failed to take reasonable steps to verify the legitimacy of its robocall targets before initiating its high-volume calling campaign and has consistently and continuously failed, even after being put on notice multiple times, to cease all communication despite having no prior express consent to call Plaintiff's number.

15. These calls originated from various numbers, including (866) 931-8494, (877) 689-8723, (877) 689-8725, (877) 469-6720, (877) 488-3538, (866) 532-0423, (866) 532-0424, (866) 535-9492, as well as numerous blocked or unknown numbers. Many of these calls came in rapid succession, often within minutes or hours of each other, compounding Plaintiff's frustration. These calls persisted from July 2023 through the present date, occurring repeatedly and frequently, further exacerbating the harassment Plaintiff endured.

16. On July 24, 2023, Plaintiff visited a local T-Mobile store and obtained a new phone number. Almost immediately upon activation, Plaintiff's phone was flooded with a relentless stream of automated calls from Defendant. Without having provided this number to Defendant,

Plaintiff was inundated with pre-recorded robocalls from day one, disrupting his ability to use the number for its intended purpose and setting off a prolonged period of harassment and frustration.

17.     Beginning from the first week of receiving these calls in July 2023, Plaintiff himself began contacting Defendant to demand they stop calling his number. Despite being explicitly told in the first week after receiving his new number that they were calling the wrong number and should stop calling, Defendant continued its relentless barrage of calls without pause.

18.     Defendant engaged in an indiscriminate robocalling campaign, seeking to contact individuals or businesses wholly unrelated to Plaintiff. In doing so, Defendant hijacked Plaintiff's phone number and relentlessly bombarded him with more than 3,000 pre-recorded calls since Plaintiff obtained this number. Plaintiff has identified at least 300 unique days on which Defendant made calls and on average, received between 15 to 16 calls per day, meaning Plaintiff has most likely received more than 4,650 pre-recorded robocalls. *See* Exhibit A detailed call log documenting a portion of these calls, which primarily includes those that were either answered or went to voicemail.

19.     Upon information and belief, numerous additional calls were made that were not answered, did not reach voicemail, and the volume of Defendant's pre-recorded robocalls is likely even higher.

20.     These unauthorized calls infiltrated every aspect of Plaintiff's daily life, constituting an unrelenting and inescapable form of harassment. Despite Plaintiff's efforts to ignore the calls, the volume and persistence rendered them unavoidable.

21.     Defendant willfully and deliberately engaged in a ceaseless barrage of pre-recorded robocalls that invaded his privacy. With no way to opt out of these robocalls through the automated

system, Plaintiff was forced to call Defendant back multiple times in an attempt to make the harassment stop.

22. On at least six separate occasions throughout the last year and a half since July 2023, Plaintiff personally called Defendant to demand they stop calling his number.

23. However, each time Plaintiff called Defendant back to address the repeated robocalls, he was met with contradictory responses from Defendant's representatives. Some agents claimed the calls were intended for a business or another individual, while others provided vague or conflicting information about why the calls were being made.

24. When Plaintiff called back, Defendant's representatives gave him all different excuses—many times telling him they had removed his number, many times claiming they couldn't remove his number, many times saying his number wasn't in their system, and at times telling him to mail letters. Despite every attempt by Plaintiff to get Defendant to stop, the calls continued unabated up until today.

25. On at least one occasion, when Plaintiff called Defendant back at the exact number that had just called him— (866) 931-8494—the agent on the line did not even acknowledge that the number belonged to Defendant.

26. When Plaintiff asked how to formally request that the calls stop, the instructions varied wildly depending on which agent he spoke to. Some representatives told Plaintiff he needed to submit a written request but gave him different mailing addresses for where to send it. Others suggested there was no way to remove his number unless he provided account details—which Plaintiff did not have since he had no relationship with Defendant.

27.     Each time Plaintiff followed the steps given, the next agent he spoke with would contradict the previous instructions given, leaving Plaintiff without a clear resolution and trapped in an endless cycle of automated calls and unhelpful responses.

28.     After multiple failed attempts to speak to a representative or reach anyone with the authority to stop the calls, Plaintiff resorted to sending formal written requests demanding that Defendant cease and desist its relentless harassment.

29.     On at least five separate occasions, Plaintiff sent letters via certified mail to Defendant, including on July 25, 2023, August 22, 2023, November 4, 2024, December 19, 2024, and January 31, 2025, requesting to not be contacted. Despite these formal notices, Defendant knowingly and willfully refused to take any corrective action, underscoring its prioritization of aggressive telemarketing over consumer rights and legal compliance.

30.     These repeated calls willfully, intentionally, and egregiously intruded upon Plaintiff's privacy, disrupted daily life, and caused significant mental anguish and frustration. Defendant's conduct was not only negligent but also exhibited a reckless and calculated disregard for Plaintiff's rights and well-being. Even when Plaintiff followed every available avenue to stop the calls—including calling back, speaking with representatives, and sending written demands— Defendant refused to take corrective action. Despite knowing its actions were unlawful, Defendant deliberately persisted, ensuring that the harassment remained ongoing and inescapable. This flagrant and escalating misconduct reflects a complete indifference to consumer protections and an outright refusal to comply with federal and state law. As a result of these willful and knowing violations, Defendant is subject to enhanced statutory damages under the TCPA.

31. Despite being put on repeated and unequivocal notice, Defendant willfully and knowingly refused to take even the most basic measures to verify that Plaintiff was the true and rightful owner of the targeted phone number.

32. From the moment Plaintiff obtained this number, he went out of his way to inform Defendant—on at least ten different occasions—that it had the wrong person, that it was in violation of the law, and that it must immediately cease all calls. These requests included multiple verbal cease-calling requests made during the six phone calls Plaintiff placed to Defendant, as well as formal cease-and-desist letters sent via certified mail (*See* Composite Exhibit B).

33. Despite these clear directives, Defendant deliberately ignored these clear directives and continued its unlawful robocalling campaign.

34. Defendant repeatedly and flagrantly engaged in egregious, willful misconduct with full knowledge of its illegality, despite being placed on explicit notice numerous times. Each unauthorized and harassing call they made was not the result of negligence or error, but part of a sustained and calculated pattern of defiance—a brazen and contemptuous disregard for the law, for consumer rights, and for the consequences of their actions. Defendant's conduct reflects a total abandonment of compliance, executed with knowing indifference and reckless disregard. They demonstrated no concern for legal boundaries or accountability. This is precisely the kind of relentless, willful behavior the statute was designed not only to prevent, but to punish to the fullest extent—through the imposition of maximum statutory damages.

35. Defendant's conduct violated 47 U.S.C. § 227(b)(1) by willfully transmitting unsolicited prerecorded calls to Plaintiff's cell phone without prior express consent. The sheer volume of these calls—thousands of relentless, non-stop, pre-recorded robocalls flooding Plaintiff's phone at all hours, averaging 15 to 16 calls per day—constitutes one of the most

reckless, egregious, and abusive violations of the TCPA since its enactment. Defendant's conduct was not merely unlawful; it was willfully unlawful, demonstrating an utter disregard for legal compliance and consumer rights. Despite being explicitly put on notice that Plaintiff owned the phone number, despite being informed that Defendant lacked prior express consent, and despite being repeatedly instructed to cease all contact, Defendant knowingly and intentionally persisted in it's campaign of nonstop harassment. "The recipient of "more than one unwanted telemarketing call" has suffered an injury under the TCPA." *Grigorian v. FCA US LLC*, 838 Fed. Appx. 390, 393 (11th Cir. 2020)

36.     "The Eleventh Circuit has held that in the context of a TCPA claim, the "receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019). Shutler v. Citizens Disability LLC, 347 F.R.D. 663, 671 (S.D. Fla. 2024). However, Defendant's conduct does not merely meet this threshold—it obliterates it.

37.     For more than a year, Plaintiff was subjected to an unrelenting, inescapable, and overwhelming onslaught of thousands of illegal robocalls. Defendant executed this systematic attack on Plaintiff's phone with complete and utter disregard for the law, for basic decency, and for the fundamental rights Congress sought to protect through the TCPA. This was not an accident, nor was it an isolated oversight—it was a calculated, profit-driven campaign of harassment. Plaintiff's privacy, peace, and normalcy were shattered beyond reason.

38.     For more than a year, Plaintiff was unable to enjoy peaceful time in his home as multiple robocalls came through his cell phone and shattered his domestic peace.

39.     For more than a year, Plaintiff received a barrage of calls that caused him repeated aggravation, costing him resources, and interfering with his daily activities such as driving safely.

40.     For more than a year, Plaintiff received a barrage of calls to his cellphone that made his phone unavailable for otherwise legitimate pursuits. For example, when receiving these robocalls other legitimate personal and business calls would not go through.

41.     On December 19, 2024, Mr. Levy formally opted out of the *Head v. Citibank* settlement by submitting a written request via certified mail that explicitly listed his phone number—the same number that Defendant had been calling relentlessly. *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022). (*See* Exhibit. C: 12/19/24 Letter to Administrator).

42.     After submitting this opt-out request, Plaintiff followed up with the settlement administrator via email on both December 30th and 31st, 2024, requesting confirmation of its receipt. On January 7, 2025, the administrator confirmed via email that Plaintiff's opt-out letter had been received and that the opt-out was processed. The administrator further confirmed on January 9, 2025, that "the attorneys also received a copy of your opt-out request." Despite these confirmations that both the settlement administrator and Defendant's attorneys at Ballard Spahr LLP had received Plaintiff's opt-out notice, Citibank blatantly disregarded the opt-out and continued its robocalling campaign without pause, displaying an intentional and knowing violation of Plaintiff's statutory rights.

43.     However, Plaintiff didn't stop there. In order to leave no doubt that the opt-out demand reached Defendant's legal team, Plaintiff contacted the settlement administrator again to explicitly ask whether Defendant's attorneys had personally received, reviewed, and understood the contents of his opt-out notice. This was not a routine follow-up — Plaintiff pressed to confirm that his intent had been made abundantly clear: all calls must stop.

44. Plaintiff was advised that the attorneys did in fact receive his opt-out. Plaintiff made clear in that exchange that the opt-out was not a procedural formality or a generic withdrawal — it was a directive. It was a legally binding, unambiguous demand to cease all robocalls, with no wiggle room to misinterpret consent.

45. Plaintiff then placed a follow-up phone call to the administrator to underscore this point once more. He asked again if Defendant's attorneys had acknowledged and understood the opt-out — and made it unmistakably clear that the calls were not authorized and must stop. Plaintiff's goal was to eliminate any possible future claim by Defendant that they didn't "understand" what the opt-out meant.

46. These repeated confirmations, both in writing and by phone, take this case beyond mere statutory violation — they expose deliberate misconduct. Defendant was told. Their lawyers were told. Everyone involved knew. Even so, Defendant kept calling anyway. That is not an oversight. That is next-level egregious conduct.

47. After the continuous barrage of calls persisted even after his opt-out, Plaintiff again contacted the settlement administrator on or about March 7, 2025, to confirm that a copy of his opt-out request had been sent to Defendant's attorneys. This confirmation put Defendant's attorneys on explicit notice that they should instruct their client to stop calling Plaintiff's number, yet the calls continued unabated.

48. On average, Defendant placed approximately 15 to 16 calls per day, every single day, for more than a year, resulting in thousands of willful and unauthorized pre-recorded robocalls made without prior express consent. This relentless, unrelenting, and systematic bombardment of Plaintiff's phone was not a mistake—it was an intentional, calculated, profit-driven assault on Plaintiff's privacy. Defendant's reckless persistence in making these calls, despite clear revocation

of any mistaken consent, demonstrates a blatant disregard for the law, consumer rights, and basic human dignity. This misconduct was not just unlawful—it was willfully unlawful, executed with complete indifference to the distress and disruption inflicted upon Plaintiff.

49.     Defendant's banking system is deliberately designed to deploy a relentless deluge of pre-recorded robocalls, relying on automated pre-recorded calling technology to flood individuals with unwanted calls. Despite clear prohibitions under the TCPA, Defendant continues to knowingly exploit this technology in a manner that disregards legal compliance and individual privacy. When Defendant designed this system, it did so with full knowledge that Plaintiff—and anyone similarly affected—would have no meaningful way to escape the onslaught of these unlawful robocalls.

50.     Defendant knew full well that if it could not use pre-recorded messaging technology without violating the law, then it should not use it at all. Yet, instead of taking corrective action, Defendant persisted. Defendant recently settled a lawsuit involving similar TCPA violations, from which Plaintiff opted out, yet it has willfully refused to implement any meaningful safeguards.

51.     Upon information and belief, PACER records reveal that Defendant has been sued repeatedly for these unlawful robocalls for many years, and despite this long history of litigation, it has made no substantive changes to its practices. This brazen refusal to comply with the law underscores Defendant's willful behavior—especially in this case, where, from the moment Plaintiff received his new phone number, he has put Defendant on notice to stop this deluge of abuse. Yet, Defendant has ignored all such requests, continuing its reckless and egregious violations of the TCPA without regard for Plaintiff's rights.[1]

---

[1] *See Fridline v. Millennia Tax Relief, LLC*, 727 F. Supp. 3d 517, 525-526 (M.D. Pa. 2024). (finding defendant's widespread use of prerecorded voice calls as part of a telemarketing campaign, without prior express consent, constituted willful or knowing violations of the TCPA, warranting treble damages).

52.     Defendant's repeated and willful failure to obtain proper consent before initiating telemarketing calls constitutes a brazen and systemic breach of the TCPA's safeguards. Rather than taking even the most basic steps to ensure compliance, Defendant knowingly engaged in a reckless, unchecked robocall campaign—subjecting Plaintiff to thousands of illegal, intrusive, and unwanted communications.

53.     Courts have consistently recognized that such unwanted communications "can constitute a concrete injury-in-fact for Article III purposes." *See Gadelhak v. AT&T Servs., Inc.*, 950 F. 3d 458, 463 (7th Cir. 2020); *see also*, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F. 3d 1037, 1043 (9th Cir. 2017); *Glasser*, 948 F.3d at 1306. On January 31, 2025, Plaintiff sent a formal demand letter via certified mail to Defendant's attorneys at Ballard Spahr LLP, explicitly reiterating that Citibank continued to unlawfully call his phone despite his opt-out. In the letter, Plaintiff warned: "Even though you and Citibank received my opt-out notice, Citibank continues to willfully defy the law and call me daily in a relentless deluge of harassing robocalls." The letter further stated: "This is your final opportunity to resolve this matter pre-suit." (*See* Composite Exhibit B: 1/31/25 Demand-Letter)

54.     Plaintiff followed up with an additional letter via certified mail on March 4, 2025, (*See* Exhibit B 1/31/25 Follow-Up to Demand-Letter) and subsequently sent an email to Defendant's attorneys on March 7, 2025, to confirm receipt of his previous communications. These communications left no doubt that Defendant's legal team was fully on notice that the calls were unauthorized and had to stop.

55.     Yet, Defendant ignored this notice just as it ignored all previous cease-call requests. Defendant's refusal to comply with its own legal obligations and its continued disregard for Plaintiff's rights demonstrate an egregious and calculated violation of consumer protection laws.

Defendant has continued its harassing calls up to the present date, showing complete disregard for Plaintiff's repeated demands to stop.

56.     Defendant's use of automated and prerecorded calls is the very type of invasive, disruptive, and unlawful conduct that Congress sought to eliminate through the TCPA. Rather than exercising even the slightest restraint, Defendant has weaponized its robocall system to bombard Plaintiff with relentless and unauthorized prerecorded messages—fully aware that its actions violate federal law. Courts have repeatedly affirmed the enforceability of the TCPA's robocall restrictions, rejecting attempts to undermine its vital consumer protections. Yet, Defendant has brazenly disregarded these rulings, continuing its unchecked robocall campaign with reckless indifference to both the law and the individuals it harms.[2]

57.     Despite multiple warnings, Defendant knowingly and willfully persisted in its unsolicited telemarketing practices in direct violation of the TCPA. Defendant's actions were not accidental, nor were they the result of mere oversight—this was a deliberate and calculated scheme. Even after receiving Plaintiff's formal opt-out request from the *Head v. Citibank* case settlement on December 19, 2024 (Exhibit B), and subsequent confirmation of receipt on January 7, 2025, Defendant made no effort to halt its unlawful robocalling campaign. Instead, Defendant escalated its harassing conduct, further demonstrating a reckless disregard for Plaintiff's rights.[3]

58.     In the January 31, 2025, Follow-Up to Demand-Letter, Plaintiff reinforced that Defendant's conduct was ongoing and deliberate. He wrote, "Citibank has been on notice of this

---

[2] *See Moody v. Synchrony Bank, 529 F. Supp. 3d 1362 (M.D. Ga. 2021)* (affirming that the TCPA's prohibition on robocalls remained enforceable, as severability allowed unconstitutional provisions to be voided without invalidating the statute's core protections).

[3] "Courts in this district have established that "under federal common law principles of agency, a party may be vicariously liable for TCPA violations even if that party did not initiate or make the calls at issue."" *Cacho v. USHealth Advisors,* LLC, No. 6:23-CV-737-CEM-EJK, 2024 WL 3917205 (M.D. Fla. Aug. 22, 2024) (quoting *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-CV-1692-LHP, 2023 U.S. Dist. LEXIS 53057, 2023 WL 2664203, at *6 (M.D. Fla. Mar. 28, 2023))

unlawful conduct for more than a year, as I have made repeated requests via phone and mail, demanding that this harassment and unauthorized hijacking of my phone number stop. Yet, despite all of this, the calls have not ceased." He concluded by emphasizing that the conduct was "beyond egregious." (Exhibit B: 1/31/25 Follow-Up to Demand-Letter).

59.     By knowingly and willfully disregarding Plaintiff's repeated and explicit cease-calling requests, Defendant brazenly violated 47 U.S.C. § 227(b). These persistent, unauthorized robocalls were not only unlawful but constituted an unrelenting and egregious invasion of Plaintiff's privacy—causing severe annoyance, harassment, and ongoing disruption to daily life. Defendant's flagrant refusal to abide by the law, despite being put on notice multiple times, demonstrates a reckless indifference to consumer rights and legal obligations. Given the willful and knowing nature of these violations, Defendant is subject to enhanced damages under 47 U.S.C. § 227(b)(3).[4]

60.     Defendant's conduct, including the transmission of thousands of unsolicited pre-recorded messages, constitutes a direct and ongoing violation of the TCPA, resulting in a concrete injury.

61.     Courts have repeatedly held that even a single unwanted robocall can amount to a legally cognizable injury—yet Defendant's relentless and willful robocall campaign inflicted this harm on Plaintiff thousands of times. These unauthorized intrusions into Plaintiff's privacy are precisely the type of abusive practices Congress sought to eliminate through the TCPA, reinforcing the necessity of strict enforcement and maximum statutory penalties against Defendant.[5]

---

[4] *Culbertson v. Pro Custom Solar LLC, No. 8:22-CV-2252-CEH-JSS, 2023 WL 5749228 (M.D. Fla. Sept. 6, 2023)*). ("[T]the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)[.]")

[5] "Both harms represent "an intrusion into peace and quiet in a realm that is private and personal."" *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023) (citing *Gadelhak*, 950 F.3d at 462.)

62.     Defendant's high-volume and unauthorized use of prerecorded messages was not incidental—it was an intentional, systematic, and profit-driven practice executed with reckless disregard for consumer privacy and statutory protections under the TCPA. Rather than implementing even minimal safeguards to prevent unlawful robocalls, Defendant knowingly leveraged its automated dialing systems to bombard Plaintiff with thousands of intrusive and unlawful calls, fully aware that it lacked prior express consent. *See Office of the AG v. Smartbiz Telecom LLC*, 688 F. Supp. 3d 1230, 1236 (S.D. Fla. 2023); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1250 (S.D. Fla. 2019).

63.     Defendant's relentless robocalls inflicted precisely the type of nuisance, disruption, and privacy invasion that Congress sought to eliminate through the TCPA. The sheer volume and persistence of these calls transformed Plaintiff's daily life into a cycle of harassment, causing ongoing frustration, intrusion, and emotional distress. Courts have repeatedly recognized that such unauthorized robocalls constitute a concrete injury, as they "present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA." *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019); *see also Pederson v. Donald J. Trump for Pres., Inc.*, 465 F. Supp. 3d 929 (D. Minn. 2020).

64.     Defendant's abusive robocalling practices are not isolated incidents but part of a widespread pattern of misconduct. Numerous consumers have reported receiving deceptive pre-recorded voicemails falsely claiming to address a "personal business matter" only for the calls to be misdirected to unrelated individuals, including family members and third parties. These misleading and intrusive robocalls have caused confusion, distress, and disruption, further demonstrating Defendant's reckless indifference to consumer privacy and its systemic disregard for TCPA compliance.

65.     Defendant knowingly deployed automated systems to transmit prerecorded messages directly to consumers' inboxes—an invasive practice that the Federal Communications Commission ("FCC") has explicitly deemed a "call" under the TCPA. Rather than complying with federal regulations, Defendant exploited this technology to circumvent consumer protections, enabling a widespread telemarketing scheme that targeted Plaintiff and countless others. This calculated misuse of ringless voicemail technology underscores Defendant's deliberate and systemic disregard for privacy rights and legal compliance.

66.     Defendant's actions were not just reckless—they were deliberate, calculated, and executed with complete disregard for Plaintiff's privacy. Despite Plaintiff's repeated and unequivocal demands to cease all contact, Defendant willfully persisted, bombarding Plaintiff with automated and pre-recorded messages that repeatedly invaded his personal space, disrupted his peace, and caused ongoing frustration. This sustained intrusion underscores Defendant's flagrant violation of the TCPA and its utter indifference to consumer rights.

67.     Defendant knowingly continued its unlawful calling practices, causing significant disruption to Plaintiff's privacy and daily life, despite being fully aware of the illegal nature of its actions.

68.     Defendant's continued violations of the TCPA are even more egregious given that it had been explicitly informed—through multiple written correspondences—that Plaintiff had opted out of the settlement and was actively pursuing legal action to stop the harassment.

69.     Despite Plaintiff's repeated efforts to stop the harassment, Defendant's representatives either ignored or outright dismissed these requests, failing to take any remedial action. Plaintiff was forced into an endless and futile cycle of attempted resolution, with no meaningful way to escape Defendant's relentless robocall barrage. This complete failure to

implement even the most basic compliance measures underscores Defendant's reckless indifference to consumer rights and legal obligations.

70.     Defendant's relentless robocalling campaign inflicted substantial harm on Plaintiff, causing significant disruptions, mental distress, and a continual waste of time. These unlawful calls were not random errors but the result of Defendant's deliberately structured corporate policies, which prioritized aggressive automated dialing over legal compliance. Despite Plaintiff's repeated and unequivocal demands to cease contact, Defendant knowingly persisted—perpetuating a systemic and profit-driven misuse of prerecorded messaging system and ATDS technology at the direct expense of Plaintiff's rights and privacy. This calculated refusal to implement even the most basic consumer safeguards underscores Defendant's reckless indifference to federal law and the protections enshrined in the TCPA.[6]

71.     Courts around the country have held that "the receipt of just one or two messages sent in violation of the TCPA, without more, is sufficient to confer standing." *Grigorian v. FCA US LLC,* 838 Fed. Appx. 390 (11th Cir. 2020).

72.     Defendant's refusal to take basic remedial steps to correct its errors—despite being repeatedly informed— shows its flagrant indifference to consumer rights. This includes Defendant's continued harassment even after Plaintiff's opt-out request had been formally acknowledged. Rather than ceasing its conduct, Defendant treated Plaintiff's opt-out as meaningless, continuing to bombard him with robocalls in willful defiance of its legal obligations.

73.     Defendant, either directly or through its agents, transmitted number unsolicited and identical prerecorded telemarketing calls to Plaintiff's phone, each designed to lure Plaintiff into

---

[6] *See Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 3d 1247, 1249 (S.D. Fla. 2014). (where the court noted that defendant's corporate policies were "structured as to continue to call individuals even if they have revoked any consent" and provided "no means for Plaintiff to have his cellular number removed from the call list").

engaging by pressing a specified number. These deceptive robocalls were part of Defendant's calculated effort to maximize consumer interaction while deliberately ignoring legal requirements for prior express consent. The sheer volume of these calls underscores Defendant's willful violation of the TCPA and its systemic misuse of automated technology for profit at the expense of consumer rights.

74. Defendant failed to implement or enforce even the most basic internal Do-Not-Call policy, as evidenced by its repeated and relentless marketing communications to Plaintiff despite explicit cease-calling demands. This blatant disregard for established consumer protection protocols demonstrates Defendant's systemic failure to comply with the TCPA.

75. The telemarketing representatives who contacted Plaintiff acted on behalf of Defendant, as demonstrated by the links and contact information provided in their communications, which referenced both Defendant and its affiliated entities.

76. Defendant's complete failure to implement or enforce a legitimate consent mechanism demonstrates a reckless disregard for consumer privacy rights and TCPA compliance. Rather than ensuring that consumers were meaningfully informed and able to exercise control over their communications, Defendant deliberately structured its telemarketing system to operate without proper safeguards. Courts have consistently held that businesses must establish clear and conspicuous consent mechanisms to protect consumers from unauthorized robocalls.

77. Defendant has demonstrated a systemic pattern of willful noncompliance with the TCPA, repeatedly initiating calls without consent and continuing its unlawful telemarketing practices even after being explicitly informed to stop. These actions underscore Defendant's flagrant indifference to consumer rights and federal statutory safeguards.

78.     Despite Plaintiff's repeated and unequivocal demands to cease all contact, Defendant willfully and systematically persisted in placing hundreds of automated and prerecorded calls. Using dialing systems programmed to indiscriminately target preloaded contact lists, Defendant blatantly disregarded both federal regulations and Plaintiff's privacy rights. This deliberate refusal to comply with cease-calling requests further underscores Defendant's reckless indifference to legal safeguards and its prioritization of telemarketing over lawful consumer protections.[7]

79.     Defendant's unlawful robocalling campaign violates both the TCPA. Defendant's willful and repeated violations of both statutes highlight its blatant disregard for consumer protection laws, necessitating full statutory relief.

80.     Plaintiff made multiple attempts to resolve the issue by answering Defendant's calls and navigating automated prompts to speak with a live representative. Each time, Plaintiff informed Defendant's employees that the calls were misdirected and demanded that they cease contact. Despite these efforts, the calls continued.

81.     Courts in this district have consistently awarded treble damages in cases where a defendant knowingly and willfully continued making unsolicited calls after receiving explicit cease-calling demands from the Plaintiff. Defendant's repeated and deliberate violations of these requests, despite clear notice, warrant the imposition of maximum statutory damages.[8]

---

[7] *Adams v. Ocwen Loan Servicing, LLC, 366 F. Supp. 3d 1350 (S.D. Fla. 2018)* ("Plaintiff also alleges that Defendant ignored Plaintiff's numerous demands that Defendant cease calling, which also suggests that Defendant was autodialing Plaintiff.")

[8] *See, e.g., Milana v. DECA Fin. Services, LLC, No. 8:18-CV-450-T-33TGW, 2018 WL 3621366 (M.D. Fla. July 30, 2018)*) (234066 at *8-9 (M.D. Fla. May 10, 2017) (awarding treble damages after finding Plaintiff's allegation that he expressly told defendant to stop calling his cell phone "sufficient to establish that defendant knew it did not have consent to call Plaintiff's cell phone"); *Gambon v. R & F Enterprises, Inc., No. 6:14-CV-403-ORL-18, 2015 WL 64561 (M.D. Fla. Jan. 5, 2015)* (awarding treble damages after finding plaintiff made multiple requests to Defendant to be removed from Defendant's automatic telephone dialing system, but Defendant "continued to place automated calls to Plaintiff's cell phones")

82.     Upon information and belief, Defendant's unlawful robocalling practices were not accidental or isolated incidents but part of a deliberate and systemic telemarketing strategy designed to maximize outreach at the expense of consumer rights. Rather than implementing safeguards to ensure legal compliance, Defendant prioritized high-volume, automated calling, knowingly disregarding both federal and state laws. This calculated business model reflects a reckless indifference to legal obligations and underscores the need for strict enforcement and maximum statutory penalties.

83.     Defendant's ongoing harassment of Plaintiff is a testament to its deliberate refusal to comply with even the most basic requirements of the TCPA.

84.     In many instances, Defendant's robocalls resulted in repeated missed calls when no voicemail was left, further disrupting Plaintiff's daily life. Despite Plaintiff's multiple and unequivocal demands to cease all contact, Defendant persisted in its unlawful calling campaign, demonstrating a blatant disregard for Plaintiff's privacy and a willful violation of federal regulations prohibiting such conduct.[9]

85.     Defendant's persistent and willful statutory violations inflicted significant harm upon Plaintiff, including repeated invasions of privacy, ongoing harassment, and severe disruption to daily life. These unlawful robocalls caused undue frustration, anxiety, and a constant intrusion into Plaintiff's personal time, further underscoring the egregious nature of Defendant's misconduct and the necessity of strict statutory penalties.[10]

---

[9] *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1206 (Fla. 3d DCA 2023). ("Although outside the constraints of Article III, Eldridge must still demonstrate a concrete harm or injury from the TCPA violation to demonstrate his standing in a Florida state court.")

[10] *see also Rosser v. Growin Estate, LLC*, No. 2:23-CV-00000 (M.D. Fla. Feb. 26, 2024). (where the court recognized that repeated unsolicited communications caused injury by disturbing the plaintiff's privacy, interfering with the use of her phone, and forcing her to expend time and energy dealing with the unwanted communication.); *see also Runzi v. Synchrony Bank*, 713 F. Supp. 3d 1360, 1365 (N.D. Ga. 2024). ("The fact that Runzi and Synchrony had an agreement or relationship has nothing to do with the telephone calls made by Synchrony in this case. Would Synchrony

86.    Despite Plaintiff's explicit cease-calling requests, Defendant continued to send prerecorded voicemail messages, failing to remove Plaintiff's number from its dialing system. This blatant disregard for consent underscores Defendant's willful TCPA violations.

87.    Defendant's continued violations of the TCPA reflect a blatant disregard for consumer privacy and legal compliance. By repeatedly transmitting unauthorized prerecorded messages to Plaintiff's Florida-based phone number, Defendant engaged in intrusive, disruptive, and unlawful conduct that constitutes a tortious act within Florida, further justifying statutory penalties.[11]

88.    Defendant's continued use of automated calls and prerecorded messages—despite Plaintiff's explicit revocation of consent—exemplifies the type of unlawful conduct repeatedly found to violate the TCPA. Defendant's blatant disregard for consumer privacy and statutory protections further underscores its willful and reckless noncompliance. *Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 3d 1247, 1250 (S.D. Fla. 2014). ("Defendant ignored each of Plaintiff's demands that Defendant cease calling… which also suggests that Defendant was autodialing Plaintiff.")

89.    Defendant's blatant disregard for Plaintiff's cease-calling requests reflects its willful failure to obtain valid consent, violating the TCPA through persistent, unlawful robocalling.[12]

90.    Defendant's repeated use of prerecorded messages and automated dialing systems without Plaintiff's express consent directly violates § 501.059, Fla. Stat. These unlawful calls

---

have called her phone number using automated or prerecorded calls if she had never applied for a Synchrony card? The obvious answer is yes, because Synchrony's calls to Runzi were not made because of their card agreement.")

disrupted Plaintiff's privacy and peace, further demonstrating Defendant's ongoing disregard for consumer protection laws and restrictions against intrusive telemarketing.

91.     Defendant knowingly transmitted unsolicited telephonic communications without Plaintiff's prior express written consent, blatantly violating the TCPA's statutory protections and disregarding consumer rights.

92.     Defendant persistent and unsolicited calls repeatedly disrupted Plaintiff's daily life, blatantly disregarding prior cease-calling requests. These calls were a clear violation of the TCPA and were made with deliberate disregard for Plaintiff's legal rights.[13]

93.     Defendant's egregious and systematic violations of the TCPA represent a flagrant abuse of consumer rights, warranting the strictest enforcement, and maximum statutory damages to deter such reckless misconduct.

94.     Courts in this district have consistently held that a Defendant's willful refusal to cease communications after explicit instructions constitutes a severe violation warranting enhanced damages. Defendant's blatant disregard for Plaintiff's cease-calling demands exemplifies this egregious misconduct.[14]

95.     Defendant's repeated and willful violations of the TCPA inflicted significant harm on Plaintiff, including relentless privacy invasions, mental distress, and ongoing disruption to daily life. Given the deliberate and knowing nature of these violations, treble damages are fully warranted.

---

[13] *Cordoba v. DIRECTV, LLC,* 942 F.3d 1259, 1265 (11th Cir. 2019) ("The TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of these regulations, and plaintiffs can recover $500 in statutory damages for each violation. *See* 47 U.S.C. § 227(c)(5).")

[14]

*Fania v. Verified Docu Serv., Inc.,* No. 8:22-CV-2652-MSS-CPT, 2024 WL 1012963, at *4 (M.D. Fla. Mar. 8, 2024).

("Courts in this district have awarded treble damages where a plaintiff has adequately alleged that a defendant continued to contact plaintiff after explicitly being told by plaintiff to stop calling.")

96. Defendant's continued violations, despite repeated notifications, highlight its systemic disregard for the TCPA and its reckless failure to implement even basic compliance measures. This deliberate misconduct underscores the need for strict enforcement and maximum statutory penalties.

97. Despite the fact that Plaintiff had no prior relationship with Defendant and never provided express consent to be contacted, and despite the fact that Plaintiff sent at least six Certified Mail letters to Citibank—each one demanding that the calls stop and clearly revoking any alleged consent—Defendant ignored all notices and continued its unlawful robocalling campaign.

98. Despite the fact that Plaintiff formally opted out of the *Head v. Citibank* class action settlement and expressly stated—both to the settlement administrator and to Citibank's attorneys—that he did not wish to be contacted, Defendant continued to place automated calls to Plaintiff's number.

99. Despite the fact that Plaintiff followed up multiple times with the settlement administrator to confirm that Defendant's legal counsel had received the opt-out and was on notice of Plaintiff's demand not to be called, the calls still did not stop.

100. Despite the fact that Plaintiff sent additional Certified Mail letters directly to Ballard Spahr LLP—Defendant's attorneys—clearly stating that he had opted out and did not consent to be called, Defendant made no changes to its calling behavior.

101. Despite the fact that Plaintiff also emailed Defendant and its attorneys placing them on written notice of the unlawful calls and requesting that they cease immediately, Defendant persisted in making unauthorized robocalls in knowing violation of the law.

**CAUSES OF ACTION**

**Count I: Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227(b))**

102.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

103.    Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by knowingly and willfully transmitting prerecorded calls to Plaintiff's cellular phone without obtaining prior express consent, in blatant disregard of federal consumer protection laws.

104.    Defendant's calls exclusively utilized prerecorded messages, preventing any direct communication with a live representative. The only option for Plaintiff to engage in live communication and demand that Defendant cease its relentless robocall onslaught was to call back, only to be met with continued disregard and further automated harassment.

105.    When Plaintiff called Defendant back, Defendant admitted the calls were intended for someone else but still refused to remove Plaintiff's number. Even after knowing it had the wrong person, Defendant continued its relentless robocalling, showing a blatant disregard for Plaintiff's rights and the law.

106.    Defendant's unauthorized use of prerecorded messages caused Plaintiff significant harm, including repeated invasions of privacy, wasted time, and ongoing emotional distress. These relentless robocalls disrupted Plaintiff's daily life and exemplify Defendant's blatant disregard for consumer protections.

107.    Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff seeks statutory damages, treble damages due to Defendant's willful and knowing violations, and injunctive relief to prevent Defendant from continuing its unlawful robocalling practices.

**Count II: Violation of Florida's Telephone Solicitation Act (Fla. Stat. § 501.059)**

108.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

109.    Defendant violated Fla. Stat. § 501.059 by repeatedly placing unsolicited prerecorded sales calls to Plaintiff's cellular phone without obtaining prior express written consent, in blatant disregard of Florida's consumer protection laws.

110.    Defendant's automated system transmitted repeated prerecorded messages to Plaintiff, hijacking Plaintiff's number and leaving no means to stop the relentless calls.

111.    Plaintiff never consented to receive these calls and had requested them to cease on multiple occasions.

112.    Despite Plaintiff's repeated and explicit demands to stop the calls, Defendant knowingly persisted in its intrusive telemarketing practices. Its continued disregard for Florida's consumer protection laws further demonstrates a willful violation of Fla. Stat. § 501.059 and a blatant indifference to Plaintiff's rights.

113.    Defendant's unlawful robocalling campaign directly caused Plaintiff significant harm, including repeated invasions of privacy, emotional distress, and ongoing disruption to daily life. These persistent violations underscore Defendant's blatant disregard for consumer protections.

114.    Plaintiff seeks statutory damages, treble damages due to Defendant's willful and repeated violations, and injunctive relief to halt Defendant's ongoing unlawful telemarketing practices and prevent further harm.

## COUNT III – INTRUSION UPON SECLUSION

115.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

116.    Defendant intentionally intruded upon Plaintiff's solitude, seclusion, or private affairs or concerns by using excessive robocalls to contact the Plaintiff. These relentless robocalls which transpired multiple times a day for a period of many months, disrupted Plaintiff's daily life and exemplify Defendant's blatant disregard for consumer protection laws.

117.    The relentless robocalls which transpired multiple times a day for a period of many months constitute an intrusion that would be highly offensive to a reasonable person.

118.    Plaintiff did not consent to Defendant's conduct nor was Defendant authorized by law to engage in such conduct.

119.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to mental and emotional distress, for which Plaintiff seeks compensation in the form of actual and punitive damages

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

a. An award of statutory damages pursuant to 47 U.S.C. § 227(b)(3) and Fla. Stat. § 501.059, including treble damages for Defendant's willful and knowing violations of the TCPA and FTSA.

b. A permanent injunction prohibiting Defendant, its agents, affiliates, representatives, and all persons or entities acting on its behalf from engaging

in any further unlawful robocalling and telemarketing practices in violation of the TCPA and Florida's FTSA.

c.  An award of actual, compensatory, and punitive damages to redress the time, emotional distress, disruption, and undue hardship suffered by Plaintiff due to Defendant's persistent, unauthorized, and unlawful robocalling campaign.

d.  An award of reasonable attorney's fees, litigation costs, and any additional expenses incurred in pursuing this action, as permitted by law.

e.  Any further relief that the Court deems just and appropriate to remedy Defendant's ongoing violations of the TCPA and Florida's FTSA.

## DEMAND FOR JURY TRIAL

Plaintiff, Zalmen Levy a/k/a Zalmy Levy pursuant to Rule 1.430, Florida Rules of Civil Procedure, demands a trial by jury of all issues so triable.

Dated May 16, 2025.

*/s/ Premlata Sanchez*

Premlata Sanchez, Esq.
FL Bar No.: 51509
E-mail: premlata@fight13.com
Loan Lawyers, LLC
3201 Griffin Road #100
Fort Lauderdale, FL 33312
Telephone: (954) 523-4357
Facsimile: (954) 337-2436
***Attorney for Plaintiff***

*/s/ Matthew D. Bavaro*

Matthew D. Bavaro, Esq.
FL Bar No.: 175821

E-mail: matthew@fight13.com
Loan Lawyers, LLC
3201 Griffin Road #100
Fort Lauderdale, FL 33312
Telephone: (954) 523-4357
Facsimile: (954) 337-2436
***Attorney for Plaintiff***


*/s/ Jessica Krassner*
Jessica Krassner, Esq., LL.M.
FL Bar No.: 1000355
E-mail: jessica@fight13.com
Loan Lawyers, LLC
3201 Griffin Road #100
Fort Lauderdale, FL 33312
Telephone: (954) 523-4357
Facsimile: (954) 337-2436
***Attorney for Plaintiff***