IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE NO.: 0:25-cv-60966-WPD

ZALMEN LEVY a/k/a ZALMY LEVY,

    Plaintiff,

v.

CITIBANK, N.A.,

    Defendant.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Zalmen Levy a/k/a Zalmy Levy, pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, moves this Court for summary judgment against Defendant Citibank, N.A., and in support states as follows.

## I. INTRODUCTION

Over twenty-two months, Citibank, N.A. placed 1,543 prerecorded-voice calls to Zalmen Levy's cellular telephone. Mr. Levy had never provided his number to Citibank. He sent four certified-mail letters directly to Citibank and two additional certified-mail letters to Citibank's outside counsel at Ballard Spahr LLP, each demanding that the calls stop. He formally opted out of the settlement in *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022). Citibank's own outside counsel at Ballard Spahr LLP received and acknowledged the opt-out in writing by January 9, 2025. The calls continued. The Telephone Consumer Protection Act prohibits exactly what Citibank did: placing prerecorded-voice calls to a cellular telephone without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff now moves for summary

judgment and respectfully requests an award of at least $2,314,500 in trebled statutory damages plus a permanent injunction under § 227(b)(3)(A).

The liability record is one-sided. Every call was placed to Mr. Levy's cellular number. Every call used a prerecorded voice. No call was made for an emergency purpose. The only remaining question — whether Citibank had "prior express consent" to make the calls — is Citibank's affirmative defense, and Citibank cannot carry it. Mr. Levy never provided his number to Citibank, and never consented to anything Citibank might do. The defense Citibank might advance — that it reasonably believed someone had authority to receive its calls at this number — is foreclosed as a matter of law by a five-circuit alignment: *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), and *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) (binding this Court); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012); *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020); *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018); and *Leyse v. Bank of America, N.A.*, 804 F.3d 316 (3d Cir. 2015). No circuit has recognized the defense. This Court cannot either.

The willfulness record is also one-sided. Citibank knew from the first call on July 24, 2023 that it was using a prerecorded voice to place a call to a cellular telephone number without any documented consent from the called party. These are precisely the operative facts that make the conduct violative under *Lary v. Trinity Physician Financial & Insurance Services*, 780 F.3d 1101, 1107 (11th Cir. 2015). From July 25, 2023 forward, Mr. Levy's six certified-mail notices eliminated any residual doubt. From January 9, 2025 forward, Citibank's own outside counsel held in hand a written copy of Mr. Levy's opt-out identifying the specific cellular number the calls were reaching, and the calls continued for four more months, through the filing of this suit on May 16,

2025. Trebling is warranted on any reading of *Lary*. Under the statute, 1,543 violations × $1,500 per violation equals $2,314,500.

The Argument that follows proceeds in four parts. Section IV.A addresses each element of the § 227(b)(1)(A)(iii) claim. Section IV.B addresses consent as an affirmative defense and explains why Citibank cannot carry its burden on this record. Section IV.C establishes that Citibank's violations were willful under Lary. Section IV.D quantifies the damages at $771,500 ($500 × 1,543) at the statutory floor and $2,314,500 with trebling, and sets forth the basis for the permanent injunction. Plaintiff's Statement of Undisputed Facts and the accompanying Affidavit of Zalmen Levy support every fact this motion relies upon.

## II. FACTUAL BACKGROUND

The material facts are set forth in Plaintiff's Statement of Undisputed Material Facts filed contemporaneously pursuant to Local Rule 56.1 and supported by the Affidavit of Zalmen Levy (with Exhibits B-1 through B-12). In brief: Plaintiff Zalmen Levy activated a new T-Mobile cellular number on July 24, 2023; Citibank's prerecorded-voice calls to that number began the same day and originated from eight identified Citibank source numbers (plus blocked calls matching the same pattern); Plaintiff has never given Citibank prior express consent, whether oral, written, or otherwise, to call his cellular number; between July 25, 2023 and March 4, 2025, Plaintiff sent Citibank four certified-mail cease-calling letters and sent Citibank's outside counsel at Ballard Spahr LLP two additional certified-mail letters; on December 19, 2024, Plaintiff formally opted out of the class settlement in *Head v. Citibank, N.A.*, expressly listing the cellular number Citibank was calling; on January 7, 2025, the settlement administrator confirmed receipt and processing of the opt-out, and on January 9, 2025, the administrator confirmed that Citibank's outside counsel at Ballard Spahr LLP had also received a copy; the calls continued through the

3

filing of this action on May 16, 2025. The total is 1,543 prerecorded-voice calls over twenty-two months.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment on any part of a claim or defense. *Id.* Where the movant bears the ultimate burden of persuasion at trial on an element, the movant must come forward with affirmative evidence establishing the element. Where the non-movant — as Citibank here on the affirmative defense of consent — bears the ultimate burden, the movant may obtain summary judgment by showing an absence of evidence to support the non-movant's defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Burgest v. Colquitt County*, 177 F. App'x 852, 854 (11th Cir. 2005).

The Telephone Consumer Protection Act prohibits the making of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The prohibition is enforced by a private right of action under § 227(b)(3), which provides for statutory damages of $500 per violation, trebled to up to $1,500 per violation on proof of willful or knowing conduct, as well as injunctive relief. § 227(b)(3)(A), (B).

### IV. ARGUMENT

**A.      Citibank's 1,543 Prerecorded-Voice Calls to Plaintiff's Cellular Number Violate 47 U.S.C. § 227(b)(1)(A)(iii) as a Matter of Law.**

4

On the undisputed record, each element of a § 227(b)(1)(A)(iii) violation is established as to each of the 1,543 calls Citibank placed to Plaintiff's cellular telephone between July 24, 2023 and May 16, 2025.

The Eleventh Circuit has framed the elements accordingly: a plaintiff must show a call, to a cellular number, using a prerecorded voice or automatic dialing system, without prior express consent, and without an emergency-purpose justification. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304 (11th Cir. 2015). Three of those four elements are either conceded or established without dispute on this record; the fourth, consent — is an affirmative defense that Citibank cannot carry, as Section IV.B demonstrates.

Citibank does not dispute placing the calls. The T-Mobile call records (Affidavit Ex. B-1) catalog each call by source number, time, and date; the Affidavit identifies each call as originating from Citibank or an entity acting on Citibank's behalf. The call count is 1,543.

T-Mobile is a cellular carrier; the number at issue was activated by T-Mobile on July 24, 2023 and assigned to Plaintiff as a cellular subscriber. Plaintiff has been, at all relevant times, the current cellular subscriber of that number. Under *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014), and *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641–43 (7th Cir. 2012), "called party" under § 227(b)(1)(A)(iii) means the current subscriber, which is to say, Plaintiff and no one else. Any suggestion that some prior subscriber's consent, or some other person's beliefs about the number's ownership, could bridge the consent gap is foreclosed by both cases and by *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1266–67 (11th Cir. 2014) (per curiam), which reinforced *Osorio* in the reassigned-number debt-collection context.

Plaintiff has produced recordings that document the prerecorded-voice character of representative calls from each identified Citibank source number. The Affidavit lays pattern-

evidence foundation establishing that calls from the same source numbers used the same synthetic-voice technology and followed the same scripted pattern, with no responsiveness to human interruption. Citibank has never disputed the prerecorded-voice character of the calls.

Citibank has never asserted that any call was placed for emergency purposes, nor could it: the calls were debt-collection attempts directed at a person Citibank did not know.

The TCPA imposes strict liability for these violations. *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) ("The TCPA does not require any intent for liability except when awarding treble damages."), citing *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303 (11th Cir. 2008). Whatever Citibank believed about the number or its holder, the fact of each prerecorded call to Plaintiff's non-consenting cellular number established a violation.

Each of the 1,543 calls violated § 227(b)(1)(A)(iii). What remains is whether Citibank had the consent that would defeat liability, the subject of Section IV.B, and whether the violations were willful, the subject of Section IV.C.

**B.      Citibank Cannot Carry Its Burden to Establish Prior Express Consent.**

Consent is Citibank's affirmative defense to bear, and summary judgment is warranted on the consent question because Citibank has produced no evidence that Plaintiff ever gave prior express consent, and any suggestion that some other person's alleged consent could authorize calls to Plaintiff's cellular number fails as a matter of law.

**1. The Record Contains No Evidence of Prior Express Consent Running from Plaintiff, and the Burden of Producing It Is Citibank's.**

Prior express consent is an affirmative defense on which Citibank bears the burden of production and persuasion. *Murphy*, 797 F.3d at 1304; *Osorio*, 746 F.3d at 1255. Because Citibank will bear that burden at trial, Plaintiff's showing on summary judgment need only establish "an

absence of evidence to support" the defense. *Burgest*, 177 F. App'x at 854 (quoting *Celotex*, 477 U.S. at 325).

The Eleventh Circuit has recently, and bindingly, defined what prior express consent requires: "To give 'prior express consent' to receive a robocall, one need only 'clearly and unmistakably' state, before receiving the robocall, that he is willing to receive the robocall." *Insurance Marketing Coalition Ltd. v. FCC*, 127 F.4th 303, 318 (11th Cir. 2025). The consent must be (a) prior, given before the call; (b) express, clearly and unmistakably stated; and (c) by the called party. *Id.*; *Lucoff v. Navient Sols., LLC*, 981 F.3d 1299, 1304 (11th Cir. 2020).

Plaintiff never made such a statement to Citibank. Since receiving this number, he has had no relationship with Citibank. He never gave his T-Mobile number to Citibank. He never signed any document containing that number that reached Citibank. He never checked a box, returned a form, applied for a product, or verbally agreed to anything that could constitute consent under the *Insurance Marketing Coalition* standard. Citibank's discovery responses identify no such document, communication, or agreement, because none exists.

That alone is dispositive. But the analytical weight of Citibank's evidentiary posture is confirmed by *Foster v. National Recovery Agency*, No. 17-CV-6-LJV-HKS, 2021 WL 4941005 (W.D.N.Y. Sept. 16, 2021), where a TCPA defendant produced the plaintiff's intake form, a form containing the plaintiff's name, number, and other personal information, and nevertheless lost summary judgment. The court held that "mere possession of a plaintiff's phone number fails to establish the affirmative defense of consent at the summary judgment stage." The intake form, without evidence of how the number had been obtained from the subscriber, "merely demonstrates that whenever the document was typed [the hospital] had [the plaintiff's] phone number from some source."

7

Citibank's position is strictly weaker than *Foster*'s losing defendant. Citibank has no intake form, no credit application, no account document, no communication containing the number that could plausibly be traced to Plaintiff as its source. *Foster* lost on more evidence than Citibank has ever produced in this case. If the intake form in *Foster* was not enough to carry the burden, Citibank's empty file cannot be either.

Citibank cannot carry its burden; the absence of consent is therefore established as a matter of law on this record. That should end the consent issue. But even if Citibank tries to avoid that result by pointing to some other person's alleged consent or authority over the number, that argument also fails as a matter of law.

Even apart from Plaintiff's repeated written demands that the calls stop, Citibank cannot defeat summary judgment by suggesting that some other person may once have consented to calls to this number. Under Osorio and Breslow, the relevant consent is the consent of the current subscriber of the cellular number that was called. Plaintiff is that subscriber. Plaintiff never provided this number to Citibank and never gave Citibank prior express consent to place prerecorded calls to it.

### 2. The Intended-Recipient Defense Is Foreclosed as a Matter of Law Under a Five-Circuit Alignment.

Citibank cannot avoid summary judgment by arguing that it intended to reach someone else or reasonably believed some other person had authority to receive calls at Plaintiff's number. However framed, that theory fails because the TCPA looks to the consent of the current subscriber of the called cellular number, and Plaintiff is that subscriber. The controlling Eleventh Circuit cases, together with the decisions from the other circuits cited below, foreclose any intended-recipient or reasonable-reliance defense here.

**The Eleventh Circuit's *Osorio* and *Breslow* forbid the defense.** *Osorio* adopted *Soppet*'s rule that "called party" in § 227(b)(1)(A)(iii) means the current subscriber of the cellular number. 746 F.3d at 1251. The court rejected a "common authority" theory by which a caller might claim that someone with access to the phone had the power to supply consent; the court held that consent cannot come from anyone other than the called party, and that Congress's silence on the consent question does not supply an intended-recipient safe harbor. *Id.* at 1251–55. *Breslow* confirmed the rule in the reassigned-number debt-collection setting, again without recognizing any defense based on the caller's verification efforts, diligence, or reasonable reliance. 755 F.3d at 1266–67. Under this binding circuit law, Citibank's state of mind about the number, whatever it was, is legally irrelevant to whether consent from Plaintiff exists.

**The Seventh Circuit's *Soppet* is to the same effect.** Chief Judge Easterbrook's opinion in *Soppet* expressly rejected any "intended recipient" gloss on the statute. 679 F.3d at 641–43. The court held that consent "lapses when the number is reassigned" and placed the risk of reassignment squarely on the caller, recognizing no verification or diligence safe harbor. *Id.* The statutory design allocates the risk to the party with the ability to update its records; a caller who dials a number without current-subscriber consent does so at its peril.

**The Ninth Circuit's *N.L. by Lemos v. Credit One Bank* rejected the defense on direct presentation.** In *N.L.*, Credit One placed approximately 189 autodialed calls to a reassigned cellular number held by a minor. Credit One's theory at trial was that its calls were made in good-faith reliance on its own customer's prior consent — the same theory Citibank might advance here. Credit One asked the district court to instruct the jury that a reasonable, good-faith belief in prior-customer consent could defeat liability. The district court refused. The Ninth Circuit affirmed. *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020). The court held that "[a] caller's

intent to call a customer who had consented to its calls does not exempt [it] from liability under the TCPA when it calls someone else who did not consent." *Id.*

*N.L.* is the clearest circuit-level rejection of any such defense. If Credit One, with 189 calls and a documented consent source from a prior customer, could not even get a good-faith jury instruction, Citibank's position here is immeasurably weaker. Citibank has no documented prior-customer consent. It has only the bare assertion that it believed, somehow, that it had authority to call. That assertion, under *N.L.*, is insufficient to reach a jury, let alone to defeat summary judgment.

**The D.C. Circuit's *ACA International* confirms the absence of any FCC-sourced safe harbor.** Before *ACA International*, the FCC had purported to create a one-call safe harbor for callers who reasonably believed a reassigned number still belonged to a consenting party. The D.C. Circuit vacated that safe harbor as arbitrary and capricious, while approving the *Soppet/Osorio* current-subscriber interpretation. *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The effect was to eliminate any regulatory cushion for callers acting on belief about a prior subscriber's consent. The FCC's later Reassigned Numbers Database safe harbor (2021) is limited to callers who actually query the Database before calling — a showing Citibank has not made and cannot make on this record.

**The Third Circuit's *Leyse* aligns.** *Leyse v. Bank of America, N.A.*, 804 F.3d 316, 325 & n.14 (3d Cir. 2015), cited *Soppet* and *Osorio* with approval for the current-subscriber rule.

Five circuits have aligned against the intended-recipient defense. No circuit has recognized it. This Court, sitting in the Eleventh Circuit, where *Osorio* and *Breslow* bind, cannot do so either.

Importantly, this foreclosure operates independently of Plaintiff's six cease letters and written opt-out. Even if Plaintiff had never sent a letter and never opted out of the *Head* class, the

defense would still fail as a matter of law under *Osorio*, *Soppet*, *N.L.*, and *ACA International*. Liability under § 227(b)(1)(A)(iii) attaches to each call placed to a non-consenting current subscriber, regardless of what the caller believed about whose number it was dialing. The cease letters and opt-out do not create liability; they escalate the willfulness showing addressed in Section IV.C.

Citibank has no consent evidence from Plaintiff, and the law does not permit it to substitute some other person's alleged consent for Plaintiff's own. Summary judgment on liability is therefore appropriate on each of the 1,543 calls. The remaining question is whether the record also supports treble damages for willful or knowing violations.

**C.      Citibank's Violations Were Willful and Knowing Within the Meaning of § 227(b)(3).**

Citibank's violations were willful within the meaning of *Lary v. Trinity* from the first call on July 24, 2023; from July 25, 2023 forward they were indisputably so; and from January 9, 2025 forward they passed any conceivable threshold of egregiousness. This Court should exercise its discretion under § 227(b)(3) to treble the statutory damages.

The Eleventh Circuit's willfulness standard is precise. "The requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing the conduct that violates the statute." *Lary v. Trinity Physician Financial & Insurance Services*, 780 F.3d 1101, 1107 (11th Cir. 2015). Knowledge of the law's existence is not required; knowledge of the *operative facts* that make the conduct violative is. *Id.* The court gave a concrete illustration: a defendant violates § 227(b)(1)(A)(i) willfully when it knows that it is using an automatic telephone dialing system to place a call to an emergency line. *Id.* Each factual condition, the use of the dialing technology, the character of the number, is part of the operative fact pattern. Knowledge of them is what constitutes willfulness.

Three progressively stronger points establish willfulness on this record. Each is independently sufficient to support trebling.

### 1. Citibank Knew the Operative Facts from the First Call.

Citibank knew the operative facts of its § 227(b)(1)(A)(iii) violation from the first call. A violation consists of four operative facts: (a) placing a call; (b) to a cellular telephone number; (c) using an artificial or prerecorded voice; (d) without the prior express consent of the called party. *Osorio*, 746 F.3d at 1251; *Soppet*, 679 F.3d at 641–43. Citibank knew each of those facts from the first call on July 24, 2023.

Citibank chose to use a prerecorded-voice system; it did not stumble into one. Citibank dialed Plaintiff's number deliberately; it was on Citibank's dialer lists. Citibank knew that T-Mobile numbers are cellular numbers. And Citibank knew, as a matter of law, by operation of *Osorio*, *Breslow*, and *Soppet*, that consent under § 227(b)(1)(A)(iii) runs only from the current subscriber of the cellular number, not from some intended recipient, prior subscriber, or lead-generator source. A sophisticated national bank operating mass-calling infrastructure is charged with knowledge of the statute that governs its conduct and the binding circuit authority interpreting it. Citibank therefore knew, from call one, that consent from Plaintiff was the statutorily required prerequisite, and that it had no such consent on file. That is knowledge of the operative facts. Under *Lary*, it is willfulness.

This is not a novel or aggressive reading of *Lary*. *Lary* itself denied treble damages only because the plaintiff, a pro se claimant on default judgment, had never developed a factual record showing the defendant knew the fax was unsolicited or knew the line was an emergency line. *Lary*, 780 F.3d at 1107. Here, by contrast, Citibank's knowledge of the operative facts is established by the objective circumstances of its own conduct: it placed a prerecorded call to a cellular number

12

without having any consent-producing document on file, and it was repeatedly told to stop calling. No reasonable finder of fact could conclude that Citibank did not know what it was doing.

### 2. Six Certified-Mail Notices Eliminated Any Doubt.

Whatever residual doubt might exist about Citibank's knowledge at call one, and this Court should find none, it dissipates on July 25, 2023, when Plaintiff's first certified-mail cease letter reached Citibank. From that moment forward, Citibank had affirmative, documented, written notice that Plaintiff had not consented to the calls; Plaintiff did not become Citibank's customer after he received this T-Mobile number; the calls were unauthorized; and Plaintiff demanded the calls stop.

Five additional certified-mail notices followed over the next eighteen months: August 22, 2023 (second letter to Citibank); November 4, 2024 (third letter to Citibank); December 19, 2024 (fourth letter to Citibank, and the *Head* opt-out); January 31, 2025 (direct letter to Ballard Spahr LLP); March 4, 2025 (follow-up to Ballard Spahr). Each notice repeated and reinforced the message. Citibank's response, across all six notices, was to keep calling.

Every call placed after July 25, 2023 was placed with actual written knowledge of the absence of consent from the called party. That is willfulness under any reading of *Lary*, the narrow reading requiring knowledge of the specific legal violation, the broad reading requiring knowledge of the operative facts, or anything in between. A defendant who has been told in writing, six times, that its calls are unlawful, and who keeps making those calls, has knowingly and willfully violated the statute.

### 3. Citibank's Outside Counsel Acknowledged the Opt-Out on January 9, 2025, and the Calls Continued.

The most dramatic evidence of willfulness is the sequence that unfolded between December 2024 and early 2025. On December 19, 2024, Plaintiff formally opted out of the *Head v. Citibank, N.A.* class settlement by submitting a written opt-out to the settlement administrator.

The opt-out letter expressly listed the T-Mobile number Citibank had been calling. On January 7, 2025, the administrator confirmed by email that the opt-out had been received and processed. Two days later, on January 9, 2025, the administrator confirmed, again by email, that "the attorneys also received a copy of your opt-out request." Those attorneys were Citibank's own outside counsel at Ballard Spahr LLP.

By January 9, 2025, therefore, the specific T-Mobile number Citibank was calling had been affirmatively disclosed in writing to Citibank's own legal team as a number belonging to a non-customer who did not consent to be called. And yet the calls continued. Plaintiff sent a formal demand letter directly to Ballard Spahr on January 31, 2025, expressly stating that the conduct was "unlawful" and "willful" and that Citibank "continues to willfully defy the law and call me daily in a relentless deluge of harassing robocalls." Plaintiff followed up with an additional certified-mail letter on March 4, 2025 and an email on March 7, 2025.

The calls continued through the filing of this lawsuit on May 16, 2025.

No court construing *Lary* has ever required more than this for willfulness. Citibank's own counsel had the operative facts in writing. Citibank continued the conduct for months afterward. The result that follows is not a close question.

*Krakauer v. Dish Network, L.L.C.* controls the analysis of the discretionary trebling decision. 311 F. Supp. 3d 796 (M.D.N.C. 2017), *aff'd*, 925 F.3d 643 (4th Cir. 2019). *Krakauer* trebled damages on a 51,119-violation record where the defendant was an institutional mass-caller that had ignored its TCPA obligations over an extended period in the face of clear notice. This record is qualitatively stronger on the willfulness factors: Citibank had personalized written notice from Plaintiff himself (six times), from the settlement administrator, and from its own outside

counsel, and continued the conduct anyway. If *Krakauer*'s less-personalized notice record supported trebling, this record compels it.

Whether this Court finds willfulness from call one (under Section IV.C.1), from call two forward (under Section IV.C.2), or from the Ballard Spahr acknowledgment forward (under Section IV.C.3), the result is the same: trebling is available under § 227(b)(3), and every equitable consideration supports awarding it.

**D.     Plaintiff Is Entitled to $2,314,500 in Trebled Statutory Damages and a Permanent Injunction.**

Plaintiff is entitled to $2,314,500 in trebled statutory damages and a permanent injunction prohibiting further prerecorded-voice calls from Citibank to Plaintiff's cellular telephone.

**1. Statutory Damages of $771,500.**

At the statutory floor, Plaintiff is entitled to $771,500. The TCPA authorizes "actual monetary loss" or $500 in statutory damages "for each such violation . . . whichever is greater." 47 U.S.C. § 227(b)(3)(B). Each call is a separate violation. *Lary*, 780 F.3d at 1106–07. The T-Mobile call records establish 1,543 calls. The damages calculation is straightforward: 1,543 × $500 = **$771,500**.

**2. Trebled Damages of $2,314,500 Are Warranted.**

Trebling produces $2,314,500, and this record warrants it. On a finding of willful or knowing violation, the Court "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3). As Section IV.C demonstrates, Citibank's violations were willful. Trebling brings the damages to 1,543 × $1,500 = **$2,314,500**.

The discretion to treble is not a close call on this record. *Krakauer* identified the factors that support trebling in a TCPA case: the reprehensibility of the conduct, the defendant's history of ignoring statutory obligations, the defendant's response to notice, and the deterrent function of

aggregate statutory damages for large-scale institutional violators. *Krakauer*, 311 F. Supp. 3d at 798–804. Each factor points the same way here. Citibank's conduct was reprehensible: 1,543 prerecorded calls to a non-customer over 22 months represent a systemic failure, not an isolated mistake. Citibank's response to notice was to ignore it. Six certified-mail letters, a class-settlement opt-out, and a direct demand to its own outside counsel produced no change in behavior. And deterrence is meaningful only if the penalty is meaningful: if the cost of ignoring the TCPA is less than the cost of compliance, sophisticated institutional callers will ignore it.

The damages Plaintiff seeks are a straightforward application of the TCPA's statutory framework. The statute provides for $500 per unlawful call, and up to $1,500 per call where the violations are willful or knowing. Given the volume of calls at issue here, the resulting aggregate figure is not excessive. It is the direct and intended consequence of repeated statutory violations. Courts routinely calculate TCPA damages on a per-call basis and substantial total awards are the natural result where, as here, a defendant engages in high-volume unlawful calling conduct.

### 3. The Aggregate Raises No Due-Process Concern.

The $2,314,500 aggregate satisfies due process. Citibank may argue that the figure is constitutionally excessive under *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), or analogous authority. It is not. The governing standard is *St. Louis, Iron Mountain & Southern Railway Co. v. Williams*, 251 U.S. 63 (1919), which holds that statutory damages violate due process only when "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66–67.

The per-violation amounts here, $500 statutorily, $1,500 trebled, are modest, well within the range Congress chose for the privacy harm the TCPA addresses, and unchanged since 1991. The aggregate of $2,314,500 is a function of arithmetic: it reflects 1,543 violations, each of which Citibank chose to commit. The number of violations is entirely within Citibank's control. Citibank

16

could have stopped at ten, or at a hundred, or after the first certified-mail letter. It chose to continue for 22 months.

The *Krakauer* court rejected a due-process challenge on materially similar reasoning. The $61 million judgment in *Krakauer* was sustained because the per-violation amounts were modest and the aggregate was a function of institutional choice. *Krakauer*, 311 F. Supp. 3d at 803–04; *accord Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962–63 (8th Cir. 2019) (rejecting due-process challenge to aggregate TCPA damages). On this record, 1,543 violations, personalized written notice, continued conduct for nearly twenty-two months after first notice, a $2,314,500 judgment is not excessive. It is proportionate.

### 4. Permanent Injunction Under § 227(b)(3)(A).

The TCPA expressly authorizes private injunctive relief. 47 U.S.C. § 227(b)(3)(A) (a plaintiff may bring "an action based on a violation of this subsection . . . to enjoin such violation"). Injunctive relief is appropriate where the violative conduct is ongoing or substantially likely to recur. The record leaves no question on this score: Citibank continued calling Plaintiff for months after its own outside counsel received written notice of the absence of consent, through the filing of this lawsuit and beyond. Without a permanent injunction, Plaintiff has no assurance that the calls will stop even now.

The traditional *eBay* factors, (irreparable harm, inadequacy of legal remedies, balance of hardships, public interest), apply in modified form where Congress has expressly authorized private injunctive relief; several factors are effectively presumed in Plaintiff's favor. *Cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006). On this record, each factor supports the injunction: 22 months of prerecorded calls to a non-customer establish irreparable disruption; statutory damages are necessary but not sufficient to prevent ongoing injury; Citibank suffers no

hardship from an injunction prohibiting conduct it had no legal right to engage in; and the public interest favors enforcement of a statute Congress enacted to protect cellular telephone privacy.

A permanent injunction should issue prohibiting Citibank, and any person or entity acting on its behalf, from making any prerecorded-voice call or automatically dialed call to Plaintiff's cellular telephone number without Plaintiff's prior express written consent.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant summary judgment in his favor on all elements of liability under 47 U.S.C. § 227(b)(1)(A)(iii), find that Defendant's violations were willful and knowing within the meaning of § 227(b)(3), award Plaintiff $2,314,500 in trebled statutory damages for the 1,543 violations established on this record, and enter a permanent injunction prohibiting further prerecorded-voice or automatically dialed calls from Defendant to Plaintiff's cellular telephone number without Plaintiff's prior express written consent.

Dated: April 24, 2026

Respectfully submitted,

/s/ **Matthew Bavaro**
Matthew Bavaro, Esq.
Florida Bar No. 175821
LOAN LAWYERS, LLC
3201 Griffin Road, Suite 100
Fort Lauderdale, FL 33312
Telephone: (954) 523-4357
Facsimile: (954) 337-2436
matthew@fight13.com
jennifer@fight13.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 24, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

/s/ **Matthew Bavaro**
Matthew Bavaro, Esq.

19