IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CASE NO.: 0:25-cv-60966-WPD

ZALMEN LEVY a/k/a ZALMY LEVY,

       Plaintiff,

v.

CITIBANK, N.A.,

       Defendant.

_____/

### PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1.     On July 24, 2023, Plaintiff visited a local T-Mobile store and obtained a new phone number.

2.     Almost immediately upon activation, Plaintiff's phone began receiving repeated prerecorded calls from Defendant. Without having provided this number to Defendant, Plaintiff began receiving prerecorded robocalls to that number, which interfered with his use of the number and continued despite repeated demands that the calls stop.

3.     Defendant, through its agents, representatives, and/or employees, using the UIP dialing system, an automatic telephone dialing system ("ATDS"), placed more than a thousand unsolicited calls to Plaintiff's cellular number. See Exhibit "A," Defendant's Amended Responses to Plaintiff's First Interrogatories, Response to Interrogatory No. 2. These calls originated from multiple numbers and continued over time.

4.      Plaintiff is the sole owner, possessor, subscriber, and primary user of the cellular telephone repeatedly targeted by Defendant's automated calls, and is the person who received the calls at issue. See Exhibit "B," Affidavit of Zalmy Levy, ¶ 3.

5.      Plaintiff never provided this number to Defendant, nor was it ever associated with any account or relationship with Defendant. See Exhibit "B," Affidavit of Zalmy Levy, ¶ 4.

6.      These calls originated from various numbers, including (866) 931-8494, (877) 689-8723, (877) 689-8725, (877) 469-6720, (877) 488-3538, (866) 532-0423, (866) 532-0424, (866) 535-9492, as well as numerous blocked or unknown numbers. See T-Mobile Call Records attached as Exhibit "B-1" to the Affidavit of Zalmy Levy.

1.      Many of these calls came in rapid succession, often within minutes or hours of each other. These calls persisted from July 24, 2023 through May 16, 2025, the date of the filing of the instant lawsuit, occurring repeatedly and frequently. See Exhibit "B," ¶ ¶ 8, 31; see also Exhibit "B-1" to the Affidavit of Zalmy Levy.

2.      Beginning from the first week of receiving these calls in July 2023, Plaintiff himself began contacting Defendant in writing to demand that it stop calling. Defendant nevertheless continued placing prerecorded calls. See Exhibit "B," ¶ 14; see also Exhibit "B-2" to the Affidavit of Zalmy Levy.

3.      These unauthorized calls infiltrated every aspect of Plaintiff's daily life, constituting a repeated and ongoing intrusion on Plaintiff's privacy and personal affairs. Despite Plaintiff's efforts to ignore the calls, the volume and persistence rendered them unavoidable.

4.      Despite every attempt by Plaintiff to get Defendant to stop, the calls continued unabated up until the filing of the present lawsuit.

5. On July 25, 2023, Plaintiff sent a letter via certified mail to Defendant requesting that it stop calling Plaintiff. See Exhibit "B-2" to the Affidavit of Zalmy Levy.

6. On August 22, 2023, Plaintiff sent a letter via certified mail to Defendant requesting that it stop calling Plaintiff. See Exhibit "B-3" to the Affidavit of Zalmy Levy.

7. On November 4, 2024, Plaintiff sent a letter via certified mail to Defendant requesting that it stop calling Plaintiff. See Exhibit "B-4" to the Affidavit of Zalmy Levy.

8. On December 19, 2024, Plaintiff sent a letter via certified mail to Defendant requesting that it stop calling Plaintiff. *See* Exhibit "B-5" to the Affidavit of Zalmy Levy.

9. Despite these letters from Plaintiff, Defendant knowingly and willfully continued to call Plaintiff. *See* Exhibit "B," ¶ 20.

10. These repeated calls willfully, intentionally, and egregiously intruded upon Plaintiff's privacy, disrupted daily life, and caused significant mental anguish and frustration. *See* Exhibit "B," ¶ 32.

11. On at least six different occasions, Plaintiff informed Defendant in writing on at least five occasions that it was calling the wrong person and that it must immediately cease all calls. See Exhibits "B-2," "B-3," "B-4," "B-5," "B-7" and "B-8."

12. Despite these clear directives, Defendant continued placing prerecorded calls after receiving those written demands to stop calling. See Exhibit "B," ¶¶ 14-17, 21-25.

13. For more than a year, Plaintiff was subjected to repeated prerecorded calls over an extended period of time. See Exhibit "B," ¶ 32.

14. For more than a year, Plaintiff was unable to enjoy peaceful time in his home as multiple robocalls came through his cell phone and disrupted his daily life at home. See Exhibit "B," ¶ 32.

15.     For more than a year, Plaintiff received a barrage of calls to his cellphone that made his phone unavailable for otherwise legitimate pursuits. For example, when receiving these robocalls, other legitimate personal and business calls would not go through. See Exhibit "B," ¶ 32.

16.     On December 19, 2024, Mr. Levy formally opted out of the Head v. Citibank settlement by submitting a written request via certified mail that explicitly listed his phone number, the same number that Defendant had been calling relentlessly. Head v. Citibank, N.A., 340 F.R.D. 145 (D. Ariz. 2022). See Exhibit "B-6" to the Affidavit of Zalmy Levy: 12/19/24 Letter to Administrator.

17.     After submitting this opt-out request, Plaintiff followed up with the settlement administrator via email on both December 30th and 31st, 2024, requesting confirmation of its receipt. See Exhibit "B," ¶ 22; see also Exhibit "B-9" to the Affidavit of Zalmy Levy.

18.     On January 7, 2025, the settlement administrator confirmed via email that Plaintiff's opt-out letter had been received and that the opt-out had been processed. *See* Exhibit "B," ¶ 23; *see also* Exhibit "B-10" to the Affidavit of Zalmy Levy. On January 9, 2025, the settlement administrator further confirmed via email that Citibank's outside counsel at Ballard Spahr LLP had also received a copy of Plaintiff's opt-out request. *See* Exhibit "B," ¶ 24; *see also* Exhibit "B-11" to the Affidavit of Zalmy Levy.

19.     Despite these confirmations that both the settlement administrator and Defendant's attorneys at Ballard Spahr LLP had received Plaintiff's opt-out notice, Citibank blatantly disregarded the opt-out and continued its robocalling campaign without pause. See Exhibit "B," ¶ 30.

4

20.     In order to leave no doubt that the opt-out demand reached Defendant's legal team, Plaintiff contacted the settlement administrator again to explicitly ask whether Defendant's attorneys had personally received, reviewed, and understood the contents of his opt-out notice. See Exhibit "B," ¶ 21-25.

21.     Plaintiff was advised that the attorneys did in fact receive his opt-out. See Exhibit "B," ¶ 29.

22.     After the continuous barrage of calls persisted even after his opt-out, Plaintiff again contacted the settlement administrator on or about March 7, 2025, to confirm that a copy of his opt-out request had been sent to Defendant's attorneys. See Exhibit "B," ¶ 29.

23.     On January 31, 2025, Plaintiff sent a formal demand letter via certified mail to Defendant's attorneys at Ballard Spahr LLP, explicitly reiterating that Citibank continued to unlawfully call Plaintiff's phone despite his opt-out. In the letter, Plaintiff warned: "Even though you and Citibank received my opt-out notice, Citibank continues to willfully defy the law and call me daily in a relentless deluge of harassing robocalls." The letter further stated: "This is your final opportunity to resolve this matter pre-suit." *See* Exhibit "B-7" to the Affidavit of Zalmy Levy.

24.     Plaintiff followed up with an additional letter via certified mail on March 4, 2025, *see* Exhibit "B-8" to the Affidavit of Zalmy Levy, and subsequently sent a follow-up email to Defendant's attorneys on March 7, 2025, to confirm receipt of his previous communications. *See* Exhibit "B," ¶ 30; *see also* Exhibit "B-12" to the Affidavit of Zalmy Levy.

25.     Yet, Defendant ignored this notice just as it ignored all previous cease-call requests. See Exhibit "B," ¶ 14-18, 26, 30.

26.     Even after receiving Plaintiff's formal opt-out request from the <u>Head v. Citibank</u> case settlement on December 19, 2024, see Exhibit B-6, and subsequent confirmation of receipt

on January 7, 2025, Defendant made no effort to halt its unlawful robocalling campaign. See Exhibit "B,".

27.     In the January 31, 2025, demand letter to Ballard Spahr LLP, Plaintiff reinforced that Defendant's conduct was ongoing and deliberate. See Exhibit "B-7" to the Affidavit of Zalmy Levy. He wrote, "Citibank has been on notice of this unlawful conduct for more than a year, as I have made repeated requests via phone and mail, demanding that this harassment and unauthorized hijacking of my phone number stop. Yet, despite all of this, the calls have not ceased." Id. He concluded by emphasizing that the conduct was "beyond egregious." Id.

28.     Defendant transmitted repeated prerecorded calls to Plaintiff's cellular phone without Plaintiff's prior express consent. See Exhibit "B," ¶ 18.

29.     The repeated calls caused ongoing frustration, intrusion, and disruption to Plaintiff's daily life. See Exhibit "B," ¶ 32.

30.     Defendant continued calling even after Plaintiff repeatedly informed it in writing that it had the wrong number and must stop calling.

31.     Despite Plaintiff's repeated efforts to stop the calls, Defendant did not stop calling.

32.     Plaintiff suffered repeated disruption and invasion of privacy as a result of Defendant's prerecorded calls to his cellular phone without prior express consent.

33.     Plaintiff made multiple attempts to resolve the issue by answering Defendant's calls and navigating automated prompts to speak with a live representative. Each time, Plaintiff informed Defendant's employees that the calls were misdirected and demanded that they cease contact. Despite these efforts, the calls continued. See Exhibit "B," ¶ ¶ 18, 19, 20.

34.     In many instances, Defendant's robocalls resulted in repeated missed calls when no voicemail was left, further disrupting Plaintiff's daily life. See Exhibit "B," ¶ 32.

35.     Defendant's persistent and unsolicited calls repeatedly disrupted Plaintiff's daily life, blatantly disregarding prior cease-calling requests. See Exhibit "B," ¶ 32.

36.     Plaintiff had no prior relationship with Defendant, never provided this number to Defendant, and never gave prior express consent to be called. Nevertheless, Plaintiff sent at least six certified mail letters to Citibank, each demanding that the calls stop and revoking any alleged consent. Defendant ignored all of these notices and continued its unlawful robocalling campaign. See Exhibit "B".

37.     Despite Plaintiff's formal opt-out and his written notice to Citibank's attorneys that he did not wish to be contacted, Defendant continued placing prerecorded calls to Plaintiff's number. See Exhibit "B," ¶ 30.

38.     Despite notice to Defendant and its counsel, the calls still did not stop. See Exhibit "B," ¶ 30.

39.     Plaintiff also sent certified-mail letters directly to Defendant's attorneys stating that he did not consent to be called, yet Defendant continued calling. See Exhibit "B," ¶ 27-28.

40.     Plaintiff also emailed Defendant and its attorneys placing them on written notice that the calls were unauthorized and had to stop, yet the calls continued. See Exhibit "B," ¶ 29.

Dated: April 24, 2026

Respectfully submitted,

/s/ **Matthew Bavaro**
Matthew Bavaro, Esq.
Florida Bar No. 175821
LOAN LAWYERS, LLC
3201 Griffin Road, Suite 100
Fort Lauderdale, FL 33312
Telephone: (954) 523-4357
Facsimile: (954) 337-2436
matthew@fight13.com

7

jennifer@fight13.com
karen@fight13.com
***Attorneys for Plaintiff***

8

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 24, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

/s/ ***Matthew Bavaro***
Matthew Bavaro, Esq.
